SARAH MORROW *vs.* HENRY B. JAMES ET AL.

EQUITY. No. 7758.

Decided December 10, 1883.
The CHIEF JUSTICE and Justices HAGNER and Cox sitting.

A payment by a stockholder of a building association, of his dues to one of its officers not having authority to receive them does not discharge the stockholder if the officer so receiving the money fails to pay it over; nor can the association charge the loss against its assets in its account with the stockholders so as to diminish the value of their shares.

THE CASE is stated in the opinion.

WM. HENRY BROWNE, for plaintiff, cited the following authorities:

Bray *vs.* Farwell, 81 N. Y., 608; Bowman *vs.* Close, 44 Iowa, 428; Burnes *vs.* Pennell, 2 H. L. C., 521.; Logan *vs.* McNaugher, 88 Pa., 103; *Ex parte* Lawes, De G. M. & G., 421; Burnside *vs.* Dogrell, 3 Ex., 224; Rennie *vs.* Wynn, 4 Ex., 691; Chapler *vs.* Brunswick-Building Society, VI L. R., Q. B. Div., 710; Conway *vs.* Log Cabin Building Ass., 52 Md., 136; Bramah *vs.* Roberts, Bingham's New Cases (1836–7); Wyman *vs.* Hollowell Bank, 14 Mass., 58; Fay *vs.* Noble, 12 Cush., 17; *In re* County Life Assurance Co., L. R., 5 Ch., 288; 39 L. J. Ch., 471.

ELLIOT & ROBINSON, for defendant, cited:

Endlich on Building Ass., § 104; Ibid., §§ 517, 519; McGrath *vs.* Hamilton Building Ass., 44 Penn. St., 383.

Mr. Justice Cox delivered the opinion of the court.

The case of Morrow *vs.* James and others, is an action brought by one stockholder in the Territorial Savings, Loan and Building Association of the District of Columbia, against the officers, in their character of officers, and as representatives of the other stockholders of the same association. The case made by the bill is, that the treasurer of the association is the officer designated to receive payment of all the dues which the members have to contribute monthly, article six of the Constitution providing that, " Each stockholder, or trustee, for each and every share of

stock held by him in this association, shall pay into the treasury, in lawful money, at each and every stated meeting of this association on the second Friday of each month, the sum of one dollar;" and it is made the duty elsewhere of the treasurer to receive all moneys so paid in; that the complainant, as a stockholder of the association, regularly paid in her dues every month; that quite a number of the members of the association, instead of paying into the treasury, entrusted their dues to the secretary of the association, a man named Seth A. Terry, to pay in on their account, and that Terry, instead of paying the money into the treasury, appropriated it to his own use; that in the settlement and winding up of the association, the officers proposed to charge this loss to the association and deduct it from the assets of the association, so that the distributive shares of the several members should be thereby reduced, including that of the complainant; whereas she maintains that this was not a loss by the association, but a loss of the individual members who paid their dues to the wrong person, who had no authority to receive them, and that the dues are to be considered as not having been yet paid by those members— not lost by the association, but still a part of their assets, and to be charged against the members by whom they were payable, and that they ought not to be charged as a loss against the shares of this complainant in the assets of the concern. That is really the only question presented in the case.

The answer does not deny any of the substantial averments of the bill, but it avers certain propositions which are really conclusions of law. They aver the fact to be, "that by reason of the heavy defalcation of the secretary of the asssciation (Terry), the assets of the asssciation were so reduced that it became impracticable to divide among the shareholders more than forty per cent. of the value of their stock as it existed prior to the said defalcation; that said Terry was a member of said association and partner therein, and the complainant and all other shareholders or partners were equally bound to contribute to any losses sustained

by the partnership by reason of the defalcation aforesaid."

And they repeat that in the language following:

"That the money paid by the members or partners who did pay to the said Terry, was paid by them to an officer of the association . . . and a partner therein, and these defendants are advised, and accordingly aver, that in so far as money was paid to him in that capacity, they were paid to the association."

Then they further aver, that an amendment was made to the constitution, in the following terms:

"For the purpose of ascertaining the amount due on withdrawal, the board of directors shall, at a regular meeting, once in three months, report the value of each share of stock as shown by the assets and liabilities of the association."

The answer seems to rely, first, upon this amendment. But we are unable to perceive how that amendment affects the case, or how it advances us one step towards the solution of the question which is really involved. The amendment directs that the assets shall be ascertained periodically; but what the assets are, is the very question, and whether this loss is to be deducted from the assets as a loss of the association. So that we are only brought back by this amendment to the question stated in the outset, as the question involved in the case.

Then the answer seems to rely on the general law regulating the relations of partners or third persons. It is undoubtedly true that ordinarily a person dealing with a partner may pay money to any member of the concern, because, presumptively, each member is agent of the others. He may make contracts and give receipts and acquittances in the name of the firm, and they will bind the firm. But this presumption is rebutted, if it appears by the articles of copartnership that one or more members of the firm are the only persons designated to make contracts and give acquittances, and that is known to the party dealing with the firm. Still less would that apply to the case of a joint stock association like this, where the membership is large, and where each member is not presumed to be authorized to act

for the whole concern, but the business of the concern is to be transacted by officers elected for that very purpose.

Now, it seems to us very plain, that if one of these stockholders had paid his dues to another stockholder, who did not happen to be an officer, for the purpose of having it paid into the association, and that stockholder so receiving the money had become a defaulter, such payment would not have been by any means a discharge for the first stockholder, for it would not have been, in construction of law, received by the association. Can it make any difference that the other stockholder happens to be an officer who is not charged with the duty, or clothed with the authority to receive the money? It does not seem so to us. We have not had a single authority cited in favor of such a proposition. On the contrary, the whole tenor of the authorities seems to be in the other direction. We need not refer to more than one or two. Thus, in Burnes *vs.* Pennell, 2 H. L. C., 521, Lord Campbell says, among other things:

"Although a joint stock company is a partnership, it is a partnership of a different description, and attended with different incidents and liabilities from a partnership constituted between a few individuals who carry on business jointly with equal powers and without transferable shares. All who have dealings with a joint stock company know that the authority to manage the business is conferred upon the directors, and that a stockholder, as such, has no power to contract for the company. For that purpose, it is wholly immaterial whether the company is incorporated or unincorporated."

In another case, Burnside *vs.* Dogrell, 3 Ex., 224, it was held that the receipt of deposits by one member of a joint stock company is not equivalent to a receipt of them by the others. Pollock, C. B., said, at *nisi prius,* that "the parties who paid the money must look to those who received it." On review, the same judge said: "No authority can be implied from the mere fact of the party being secretary." Rolfe B.: said; "I am entirely of the same opinion." And Platt, B.: "I quite

agree . . . no general authority can be implied from the relationship which existed between the parties."

The third proposition relied on by the answer, is, that the payment by one of the stockholders to any officer of the association, is a discharge to him, and is a payment to the association. But in the light of these authorities, we think that unless it be shown that the officer in question has authority to receive it, it is no payment to the association at all. It seems to us, therefore, very clear on the authorities, and according to the common sense view of the matter, that if these stockholders chose to trust their dues to a man who had no authority to receive them, and he chose to appropriate them to his own use, the stockholder is not discharged, and the association is not charged with the receipt of that money, and therefore the directors in this case had no right to charge that as against the assets of the association, and thereby diminish the share of the complainant in those assets. Therefore, we think she is entitled to relief in the shape of a decree for the amount she claims in which the directors will be enjoined from reducing her share by charging against it a proportion of these lost dues.

THE UNITED STATES, EX REL. THEODORE SCHUMACHER AND
LOUIS ETTLINGER,

*vs.*

E. M. MARBLE, COMMISSIONER OF PATENTS.

LAW. No. 23,990.

{ Decided December 13, 1883.
{ The CHIEF JUSTICE and Justices HAGNER and Cox sitting.

1. Whether the act of Congress of June 18, 1874, providing for the registration of labels, is unconstitutional, and, therefore, void, *quære.*
2. A government official cannot call in question the constitutionality of a law directing him to perform a purely ministerial duty.
3. The duty of the Commissioner of Patents, on the application to him to register a label, is a purely ministerial one, as much so as the act of a recorder of deeds in placing upon a public record a muniment of title. The statute has not defined what shall be considered a label, whether it shall be descriptive of the article to which it is affixed, or whether it may be a mere arbitrary design. If the applicant presents it as a label, and appeals to the Commissioner to give it the protection which the law provides for it as a label, the duty of the Commissioner is to register it, and in doing so he gives it only the protection which the statute provides. It is not protected as a trade-mark nor as a copyright. The public at large may use and enjoy it, but *qua* label it is restricted to the use of the party who has registered it for that purpose and no other. With the character of the device the Commissioner is not at all concerned. His function is as purely ministerial as it is capable of being.

### STATEMENT OF THE CASE.

Petition praying a mandamus against the Commissioner of Patents.

The petition set forth that the relators being copartners, and the owners and producers of a certain new label designed to be attached to cigar boxes, delivered to the Commissioner of Patents five copies of said label, together with a statement showing that the same was to be used as a label on cigar boxes. Accompanying the label was a description of the same together with fee of six dollars, and a request that said label be registered in the Patent Office, and that a certificate of such registration be issued to the relators; that said proceedings were had under and in compliance with the act of Congress approved June 18, 1874, entitled

"An act to amend the law relating to patents, trade-marks and copyrights;" that the Commissioner received said fee and said labels, statement, description and request, and registered the same under serial No. 14,637, and date June 8, 1882; and that the Commissioner thereupon refused to complete the registry of said label and to furnish a copy of the record, under the seal of the Commissioner of Patents, to the relators, to the great injury of the relators. The petition concluded with a prayer that a peremptory writ of *mandamus* issue against the Commissioner of Patents, requiring him to complete the registry of said label, and to furnish the relators a copy thereof under his seal.

A rule to show cause why such writ should not be granted was issued, and made returnable before the General Term.

WM. HENRY BROWNE for respondent:

1. A *mandamus* cannot issue unless upon respondent's refusal to obey some positive law; and no act of Congress is law unless strictly in accordance with the Constitution.

The petitioners rely on the act of June 18, 1874, entitled "An act to amend the law relating to patents, trade-marks and copyrights." 18 Statutes at Large, 78; Supplement to Revised Statutes, 41.

That act lacks vitality, unless it springs from one of two clauses in Article I of the Constitution, among the enumerated powers of Congress, to wit, the third clause of section 8:

"To regulate commerce with foreign nations, and among the several States, and with the Indian tribes."

Or, in the eighth clause of said section:

"To promote the progress of science and useful arts, by securing for limited times to authors and inventors the exclusive right to their respective writings and discoveries."

2. "Authors." From the title of the act, we naturally look for authority for its existence in the latter clause of the Constitution.

Are the petitioners "authors?" They do not claim to be, but allege in their petition (p. 1) that they are "the owners

and producers of a certain label." In truth they are not "authors," for, says the United States Supreme Court:

"The writings which are to be protected are the fruits of intellectual labor, embodied in the form of books, prints, engravings and the like." Trade-Mark Cases, 100 U. S., 94.

A mere label, capable of no other use than to be pasted on a bottle or other article for sale, is not the work of an author. Scoville *vs.* Toland, 6 West. L. J., 84; Coffeen *vs.* Brunton, 4 McLean, 516.

3. "Inventors." Are the petitioners "inventors?"

They do not claim to be, for their application for registration is based on the fact of their being "sole proprietors." Besides that, inventors are protected under a different statute, and for a "limited time," and in the act of 1874 the time is not limited.

The Supreme Court said of a trade-mark—a kind of property superior in nature to a label—that it does not "depend upon novelty, upon invention, upon discovery, or upon any work of the brain. It requires no fancy or imagination, no genius, no laborious thought." Trade-Mark Cases, *supra*.

The inevitable conclusion is, therefore, that the eighth clause of section 8 of Article I of the Constitution does not apply to this case.

That is intended only to protect a "right," previously well defined and understood.

4. The commerce clause. Can that apply?

Section 3 of the said act of 1874, says:

"That in the construction of this act, the words "engravings," "cut" and "print" shall be applied only to pictorial illustrations of works connected with the fine arts.

"And no prints or labels designed to be used for any other article of manufacture shall be entered under the copyright law, but may be registered in the Patent Office."

A definition of the term "*label*," as here used, is now required. It is:

"A small piece of paper, or other material, containing the

name, title or description, and affixed to indicate its nature or contents." Worcester's Dic.

"A label is a narrow slip of silk, paper, parchment, &c., affixed to anything denoting its contents, ownership, and the like, as a label of a bottle or package." Webster's Dic.

"Label. A placard or slip attached to an object to denote its contents, destination or ownership." Knight's Am. Mech. Dic. See Skeat's Etymological Dic.

In 1874, soon after the passage of the act under consideration, the Commissioner of Patents found it necessary to construe terms, and his definition has officially been used ever since. It is printed in his rules, as follows:

"The words "prints" and "labels," as used in this act, so far as it relates to registration in the Patent Office, are construed as synonymous, and are defined as any device, picture, word or words, figure or figures (not a trade-mark), impressed or stamped directly upon the articles of manufacture, or upon a slip of paper, or other material, to be attached in any manner to manufactured articles, or to bottles, boxes, and packages containing them, to indicate the contents of the package, the name of the manufacturer or the place of manufacture, the quality of goods, directions for use," &c.

That it is the label of commerce, so frequently discussed by courts in its relation to trade-marks, that is meant in this act, there is not a shadow of doubt; and petitioners concede this point.

It cannot be denied that Congress has power, in its regulation of commerce, to protect arbitrary symbols of trade. Trade-Mark Cases, *supra*; Registration Act of March 3, 1881; Amendatory Trade-Mark Act of 1882.

In protecting commerce, manufactures are incidentally protected.

"Manufactures and commerce are, it is plain to perceive, twin sisters. As they began life together, so in the race do they keep side by side." Browne on Trade-Marks, 78. See, also, "Definition and Nature of a Trade-Mark," *Ibid.*, pp. 53–93.

The convention between the United States and the German Empire, 1872, protects "marks or labels of goods, or of their packages," and also "patterns and marks of manufacture and trade." Sec, also, the declaration between the United States and Great Britain, of 1878, "for the reciprocal protection of marks of manufacture and trade," and "everything relating to property in trade-marks and trade-labels."

But those trade-labels must be peculiar and characteristic, something of the nature of a trade-mark, although not technically such. But one "has no right to appropriate a sign or symbol, which from the nature of the fact it is used to signify, others may employ with equal truth, and therefore have an equal right to employ for the same purpose." Canal Co. *vs.* Clark, 13 Wall.; Manufacturing Co. *vs.* Trainer, 101 U. S., p. 54.

In this latter case, the court cited Baggett *vs.* Findlater (Law Rep., 17, Eq., 29), where an injunction was refused to restrain the use upon a trade-label of the term "nourishing stout," which the plaintiff had previously used, on the ground that nourishing is a mere English word denoting quality. And the authorities throughout the domain of commerce are all one way on this point. But the act of 1874 does not make any exception. It is sweeping in its language, except that it excludes trade-marks. "Prints or labels," for "articles of manufacture." Any print, any label.

The act is void for uncertainty.

5. Congress exceeded its authority in passing the act of 1874.

If that piece of legislation has any basis, it must be found in the authority to "regulate" commerce. The Supreme Court said, *inter alia*, that after the commerce specially designated:

"There still remains a very large amount of commerce, perhaps the largest, which trade or traffic, being between citizens of the same State, is beyond the control of Congress." Trade-Mark Cases, *supra*.

But the act of 1874 is not restricted in its operation to the commerce under the control of Congress. The court said:

"When, therefore, Congress undertakes to enact a law, which can only be valid as a regulation of commerce, it is reasonable to expect to find on the face of the law, or from its essential nature, that it is a regulation of commerce with foreign nations, or among the several States, or with the Indian tribes. If not so limited, it is in excess of the power of Congress. If its main purpose be to establish a regulation applicable to all trade, to commerce at all points, especially if it is apparent that it is designed to govern the commerce wholly between citizens of the same State, it is obviously the exercise of a power not confided to Congress." * * * "Here is no requirement that such person shall be engaged in the kind of commerce which Congress is authorized to regulate. It is a general declaration," etc. Trade-Mark Cases, *supra.*

Therefore, for the reason that section 3 of the act of Congress, approved June 18, 1874, entitled, "An act to amend the law relating to patents, trade-marks and copyrights," in regard to the registration of prints or labels in the Patent Office, is not warranted by the Constitution, the order made herein, for the Commissioner of Patents to show cause why *mandamus* should not issue, should be dismissed.

From the argument filed by the Commissioner the following is extracted:

By the act of June 18, 1874, the Commissioner of Patents is charged with the supervision and control of the entry and registry of prints and labels. It is his duty, therefore, to determine in every case whether or not the application preferred under that law presents proper subject matter for registration.

In the exercise of this duty it is necessary for him to determine the character of the matter offered for registration, and to ascertain that it is a lawful label within the meaning of the act.

The fact that a public officer is charged with the ministerial duties of signing, sealing, registering, and the like, carries with it, *proprio vigore,* the preliminary duty of ascer-

taining that a suitable case for action is presented. Thus, the Secretary of the Interior is not bound to sign a land patent brought before him in the usual routine of business as a patent for an invention; nor a register of wills to register a deed; nor a recorder of deeds to record a promise to pay; nor the Commisioner of Patents to record a contract for the sale of a machine, as an assignment of a patent right.

The Commissioner of Patents is required by said act to register a label, but not a design, a mechanical invention, or a trade-mark. It would introduce endless confusion into all questions of title if the allegation of the interested party as to the application of certain provisions of law to the facts of his case, were to be taken as conclusive. The respondent does not understand with the relators that the decision in the case of the United States, *ex rel.* The Willcox & Gibbs Sewing Machine Company *vs.* E. M. Marble (1 Mackey, 284), is at variance with the views here expressed. The decision upon the facts of the case was to the effect that a label which is otherwise a proper subject for registration, under the act in question, is not excluded from registration by the fact that it bears upon its face matter which might become a lawful trade-mark. The court did examine into the reasons which led the Commissioner to refuse the registry, and determining after investigation that the judgment of the Commissioner was erroneous, ordered the *mandamus* to issue.

It is respectfully submitted, therefore, that a fanciful design of the character of the one in question, not descriptive or suggestive of any trade or article of manufacture, and which might be applied as an ornament with equal propriety to a box of cigars, a bolt of cloth, a barrel of flour, or to an indefinite variety of articles of merchandise, or which might be preserved for its intrinsic merits as a work of art, or which might become a lawful trade-mark by its association with a particular brand or manufacture, is not a label within the meaning of the act of June 18, 1874. The statutory provisions relating to the same matter existing at the time